Quest Diagnostics Inc. v CSRNC, LLC

2026 NY Slip Op 02183

April 9, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Quest Diagnostics Inc., Appellant,

v

CSRNC, LLC, Doing Business as Capstone Center for Rehabilitation and Nursing, Respondent.

Decided and Entered:April 9, 2026

CV-24-2069

Calendar Date: February 10, 2026

Before: Clark, J.P., Aarons, Pritzker, Mcshan And Corcoran, JJ.

The Glennon Law Firm, PC, Rochester (Peter J. Glennon of counsel), for appellant.

Hinman, Howard & Kattell, LLP, White Plains (Jacob B. Sher of counsel), for respondent.

[*1]

Pritzker, J.

Appeal from an order of the Supreme Court (Rebecca Slezak, J.), entered October 7, 2024 in Montgomery County, which denied plaintiff's motion for summary judgment.

Plaintiff provides diagnostic testing for various conditions, including COVID-19. Defendant is a long-term care facility located in the City of Amsterdam, Montgomery County. In May 2020, as a response to the COVID-19 pandemic, Governor Andrew Cuomo issued Executive Order No. 8.202.30, requiring all long-term care facilities within the state to "make arrangements for the testing of all personnel" for COVID-19 twice per week (Executive Order [A. Cuomo] No. 202.30 [9 NYCRR 8.202.30]). In furtherance of this executive order, the Department of Health entered into an agreement with plaintiff, under which plaintiff agreed to provide COVID-19 diagnostic testing to long-term care facilities throughout the state with a price cap of $100 per COVID-19 test. In August 2020, plaintiff began providing COVID-19 diagnostic testing to defendant. Thereafter, plaintiff entered into an agreement with defendant — effective the date of signing, January 5, 2021 — agreeing to provide defendant with COVID-19 testing services at a rate of $100 per test. As relevant here, the agreement provided plaintiff with the right to bill defendant for the testing services performed. According to plaintiff, it sent invoices to defendant on a monthly basis, beginning in January 2021. In June 2021, after defendant raised concerns over the cost of influenza diagnostic testing, the parties executed an amendment to their agreement which adjusted the cost of influenza tests and combined influenza/COVID-19 tests.FN1 Plaintiff thereafter issued adjusted invoices to reflect the pricing set forth in the amended agreement; however, defendant refused to pay the outstanding balance, which is in excess of $200,000.

Plaintiff commenced this action, seeking, as relevant here, to recover the unpaid fees under breach of contract and quantum meruit theories. Plaintiff subsequently moved for summary judgment on several causes of action, including breach of contract and quantum meruit, which defendant opposed. Supreme Court denied plaintiff's motion, concluding, in relevant part, that ambiguities existed in the parties' agreement, preventing summary judgment on the breach of contract claim, and that questions of fact remained as to plaintiff's quantum meruit claim. Plaintiff appeals.

Plaintiff contends that Supreme Court erred in denying its motion for summary judgment on its breach of contract claim. "A cause of action for breach of contract requires that the plaintiff show the existence of a contract, the performance of his or her obligations under the contract, the failure of the defendant to perform its obligations and damages resulting from the defendant's breach" (Turner v Quinones, 244 AD3d 1331, 1333 [3d Dept 2025] [internal quotation marks, brackets and citations omitted]).

In support of its motion for summary judgment, plaintiff proffered[*2], among other things, invoices for COVID-19 and influenza testing performed between August 2020 and February 2022. Plaintiff also submitted the January 2021 agreement as well as the June 2021 amended agreement. Relevant here, the January 2021 agreement provided that plaintiff was to provide defendant with COVID-19 testing for defendant's residents and covered employees as requested or ordered by a physician. For its part, defendant was responsible for collecting and storing test specimens. Under the "Billing/Compensation" section of the agreement, plaintiff was to bill defendant for the testing services and defendant, in turn, agreed to pay defendant for the services performed pursuant to the rates set forth in the agreement. The agreement was effective the date of signing, January 5, 2021. Plaintiff also proffered the amended agreement, which was signed in June 2021, but specifically stated that the pricing in the amended agreement was effective as of May 2020. An attachment to the amended agreement demonstrates that the parties agreed that COVID-19 testing would be $100, influenza A and B testing would be $25, and combined COVID-19 and influenza A and B testing would be $125.

Plaintiff also proffered an affidavit from its senior program manager, who explained that plaintiff billed and invoiced all testing services provided to defendant, including those rendered prior to the execution of the January 2021 agreement, with the first invoice being sent in January 2021, after the agreement was executed. Defendant soon after "objected to the pricing of the influenza detection and the combined COVID-19 and influenza detection" tests but never objected to the COVID-19 detection tests. Meanwhile, defendant continued to order testing from plaintiff, and plaintiff eventually agreed to retroactively reduce the pricing of the influenza detection and combined COVID-19 and influenza detection, which was memorialized in the amendment to the agreement. After executing the amendment, plaintiff issued new invoices in August 2021 adjusting the previously billed amounts to be consistent with the amendment. The senior program manager averred that defendant continued to order tests from plaintiff in February 2022 and that plaintiff invoiced defendant for that testing in March 2022. Finally, as to damages sought, the senior program manager represented that defendant had not paid any of the outstanding balance, and that the amount owed is in excess of $200,000. Given the foregoing, which demonstrated a contract existed between the parties, that plaintiff performed its obligations and that defendant had not, amounting to damages exceeding $200,000, "plaintiff established its prima facie entitlement to judgment as a matter of law on the issue of liability" as to the breach of contract cause of action (Almark Holding Co., LLC v Abbas, 241 AD3d 1410, 1412 [2d Dept 2025]; see Ithaca Montessori Sch. v Pfeffer, 239 AD3d 1128, 1131 [3d Dept 2025]; Bank of Am., N.A. v Neroni, 226 [*3]AD3d 1273, 1275 [3d Dept 2024]).

Defendant, in opposition to plaintiff's motion for summary judgment, did not dispute the existence of the agreement and amended agreement, that testing services had been performed and the cost for those testing services, as set forth in the agreement and amended agreement. However, defendant argued that plaintiff's failure to timely invoice was a material breach of the contract such that defendant's performance — payment for services rendered — was excused.FN2 "A material breach is a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract. A material breach of a contract excuses the nonbreaching party's performance and precludes the breaching party from bringing a claim under the contract" (SCE Envtl. Group, Inc. v Murnane Bldg. Contrs., Inc., 242 AD3d 1457, 1460 [3d Dept 2025] [internal quotation marks and citations omitted]; see Exportaciones Del Futuro Brands, S.A. De C.V. v Authentic Brands Group, LLC, 201 AD3d 499, 500 [1st Dept 2022]).

Here, we do not find that any alleged failure to invoice monthly, as set forth in the agreement, constitutes a material breach (see Willoughby Rehabilitation & Health Care Ctr., LLC v Webster, 134 AD3d 811, 813-814 [2d Dept 2015]; Wolfson v Faraci Lange, LLP, 103 AD3d 1272, 1273 [4th Dept 2013]). Section 3.2 of the agreement states, as relevant here, that defendant agreed to pay plaintiff for laboratory services within 30 days of receiving an invoice and that defendant would be invoiced monthly. Defendant, however, did not establish that failing to invoice monthly constituted a material breach that was "so fundamental to [the agreement] that the failure to perform that obligation defeats the essential purpose of the contract" (SCE Envtl. Group, Inc. v Murnane Bldg. Contrs., Inc., 242 AD3d at 1460 [internal quotation marks and citations omitted]; see Wolfson v Faraci Lange, LLP, 103 AD3d at 1273).

To that end, at the time that the January 2021 agreement was executed, plaintiff had been conducting COVID-19 testing for defendant for approximately five months and had not been sending monthly, or any, invoices. Despite this, there was not any language added to the agreement which supports that the failure to invoice timely would constitute a material breach (see Bay St. Landing Homeowners Assn., Inc. v Meadow Partners, LLC, 169 AD3d 985, 986-987 [2d Dept 2019]; compare Andesco, Inc. v Page, 137 AD2d 349, 355-356 [1st Dept 1988]). Nor was any language added when the June 2021 amended agreement was executed, despite the monthly invoicing allegedly still not occurring. While defendant points to timely invoicing as a significant concern so that insurance or Medicaid billing could occur, again, the agreement and amended agreement are silent on any insurance or Medicaid reimbursement. Rather, the agreement specifically states that "[defendant] agrees to make payment to [plaintiff] by check, ACH [*4]payment, certified money order, or electronic wire within [30] days of the date of each . . . invoice for laboratory services." As such, defendant did not raise a triable issue of material fact such that plaintiff should be awarded summary judgment as to liability on the breach of contract cause of action, and the matter is remitted to Supreme Court for an inquest as to damages. In light of the foregoing, plaintiff's arguments as to Supreme Court's denial of quantum meruit are rendered academic, as "a party may not recover under both contract and quasi contract theories" (Villnave Constr. Servs., Inc. v Crossgates Mall Gen. Co. Newco, LLC, 201 AD3d 1183, 1185 [3d Dept 2022]).

Clark, J.P., Aarons, McShan and Corcoran, JJ., concur.

ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied that part of plaintiff's motion as to liability on the breach of contract cause of action; said motion granted to that extent and matter remitted to the Supreme Court for an inquest as to damages; and, as so modified, affirmed.

Footnotes

Footnote 1: The parties' original agreement is silent as to plaintiff's provision of influenza testing.

Footnote 2: Defendant also asserted that there was a material issue of fact because the parties' course of dealing established that the billing procedure was that plaintiff would send defendant monthly invoices for testing, defendant would then send plaintiff insurance information for test recipients and plaintiff would then bill the insurer directly. However, the agreement provides that plaintiff "shall have the right to bill [defendant] for the [t]esting [s]ervices performed pursuant to [the agreement], and [defendant] shall reimburse [plaintiff] for those [t]esting [s]ervices at the rates set forth in . . . [the agreement]" and that "[defendant] agrees to make payment to [plaintiff] by check, ACH payment, certified money order, or electronic wire within [30] days of the date of each. . . invoice for laboratory services." Notably, there is no mention of plaintiff billing an insurance company directly in either the agreement or amended agreement. Because the agreement, as to the billing procedure, is "complete, clear and unambiguous on its face[, it] must be enforced according to the plain meaning of its terms" (Town of Colonie v Global Contr. & Painting, Inc., 237 AD3d 1280, 1282 [3d Dept 2025] [internal quotation marks and citations omitted]; see EDW Drywall Constr., LLC v U.W. Marx, Inc., 189 AD3d 1720, 1722 [3d Dept 2020]); thus, we need not look to parol evidence such as that offered by defendant regarding the parties' course of dealing (see Matter of Hirschfeld, Stern, Moyer & Ross, 286 AD2d 611, 612 [1st Dept 2001]; compare Mizrahi v Cohen, 104 AD3d 917, 919 [2d Dept 2013], lv dismissed 21 NY3d 968 [2013]).